# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6402 | **DATE** | 7/14/2003 |
| **CASE TITLE** | National Diamond vs. Flanders Diamon | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ __.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due__ ___.

(4) ☐ Ruling/Hearing on ___ __ set for _ _____ at ___ ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ __ set for _ ____ at ___ __.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ __ set for _ ____ at ___ __.

(7) ☐ Trial[set for/re-set for] on __ ___ at ___ __.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _ ____ at __ ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Hearing Held. This Court concludes that Mr. d'Haene's failure to disclose the prior art references concerning the Petar Cut design constitutes inequitable conduct, but that this is not an exceptional case that would justify an award of attorneys' fees.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 15 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 200 |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL DIAMOND SYNDICATE, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | No. 00 C 6402 |
| | ) | |
| FLANDERS DIAMOND USA, INC., and | ) | |
| KUWAYAMA EUROPE, N.V., | ) | |
| | ) | |
| Defendants, Counterclaim Plaintiffs, | ) | |
| and Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEWY FRIEDRICH, N.V., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Judge

Plaintiffs National Diamond Syndicate and Lewy Friedrich, N.V. contend that the

evidence adduced at trial supports a finding of inequitable conduct in the prosecution of design

patent no. 338,851 ("the '851 patent"). Plaintiffs further contend that the evidence justifies a

finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and that

Defendants Flanders Diamond USA and Kuwayama Europe, N.V. should pay Plaintiffs'

reasonable attorneys' fees. For the reasons discussed below, this Court concludes that the

inventor's failure to disclose prior art in connection with the '851 patent application constitutes

inequitable conduct, but that this is not an exceptional case that would justify an award of

attorneys' fees under Section 285.

200

**I.      Plaintiffs Have Established by Clear and Convincing Evidence That Mr. d'Haene Engaged in Inequitable Conduct.**

Because of the *ex parte* nature of the patent application process, applicants have an express "duty of candor and good faith" that governs their dealings with the Patent and Trademark Office ("PTO"). *See* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO]"). *See also Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990) ("The duty of candor extends throughout the patent's entire prosecution history.").

This duty of candor and good faith requires that the applicant disclose to the PTO all information "material to patentability." *See* 37 C.F.R. § 1.56(a) (the "duty of candor and good faith . . . includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability as defined in this section."). When the duties set forth in Section 1.56 are breached, the applicant has procured the patent procured through inequitable conduct, and the patent is, therefore, unenforceable. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).

The withholding of known, material prior art with the intent of influencing the prosecution of the application constitutes inequitable conduct which renders the resulting patent unenforceable. *La Bounty Mfg. Co. v. United States International Trade Com'n.*, 958 F.2d 1066, 1070 (Fed. Cir. 1992). In determining whether an applicant has engaged in inequitable conduct, a court must determine "whether the withheld references satisfy a threshold level of materiality" and "whether the applicant's conduct satisfies a threshold showing of intent to mislead." *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1439 (Fed. Cir. 1991). *Cf. FMC*

2

*Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987) (alleged infringer must prove that: (1) the prior art is material; (2) the applicant had knowledge of the prior art and its materiality; and (3) the applicant failed to disclose the prior art with the intent to mislead the PTO). The party accused of infringement must prove the elements of inequitable conduct by clear and convincing evidence. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 551 (Fed. Cir. 1990).

In this case, Plaintiffs contend that Johan d'Haene, the inventor of the Flanders Brilliant Cut which is embodied in the '851 patent, failed to disclose various material prior art references in connection with the '851 patent application. Plaintiffs argue that Mr. d'Haene's failure to disclose these prior art references, all of which relate to Milan Tankosic's Petar Cut design, constitutes inequitable conduct.[1] This Court agrees.

*First*, there can be no doubt that Mr. Tankosic's Petar Cut design is highly material to the '851 patent application. Prior art is material if "(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the [PTO], or (ii) Asserting an argument of patentability." 37 C.F.R. § 1.56(b). In order for Plaintiffs to sustain their burden under this definition of materiality, they must show that Mr. Tankosic's Petar Cut design made the Flanders Brilliant Cut prima facie unpatentable or

---

[1] Plaintiffs also suggest that Mr. d'Haene failed to disclose a dispute over the inventorship of the Flanders Brilliant Cut design and that this is a separate basis for a finding of inequitable conduct. In this case, the Court concludes that Plaintiffs have not demonstrated that the dispute over inventorship of the Flanders Brilliant Cut was material (particularly in light of the jury's refusal to invalidate the '851 patent on inventorship grounds) or that Mr. d'Haene had any intent to deceive the PTO by not disclosing it in connection with the '851 patent application.

3

refuted the applicant's position that the design was patentable. *See Eastern America Trio Products, Inc. v. Tang Electronic Corp.*, 97 F.Supp.2d 395, 403 (S.D.N.Y. 2000); *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co.*, 4 F.Supp.2d 477, 482 (E.D. Va. 1998).[2]

The Petar Cut design is material because, as the evidence at trial showed and the jury found, the Petar Cut design renders the '851 patent invalid on grounds of anticipation. Sections 102(a) and 102(b) provide that a patent is anticipated and, therefore, invalid if the claimed invention was patented or described in a printed publication (1) before the invention by the applicant, or (2) more than one year prior to the filing of the patent application. *See* 35 U.S.C. §§ 102(a) - (b). Anticipation requires that "the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). *See also Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999) ("To invalidate a patent by anticipation, a prior art reference normally needs to disclose each and every limitation of the claim.").

---

[2] For many years, Section 1.56 defined information as "material" when there was "a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a) (1991). In 1992, however, the PTO amended Section 1.56, introducing a new standard for materiality. *See* 37 C.F.R. § 1.56(b) (1992), *infra*. Because the '851 patent did not issue until after the date the amended version of Section 1.56 became effective, the new standard for materiality controls here. *See* 57 Fed. Reg. 2021 (Jan. 17, 1992) (PTO notice of final rulemaking stating that new Section 1.56 will be applicable to all patent applications pending or filed after March 16, 1992). The Court notes, however, that the Petar Cut design would be highly material under the pre-1992 standard as well.

There is no question that the Petar Cut design can serve as the basis for anticipation under Sections 102(a) and 102(b) because Mr. Tankosic obtained a Canadian patent for the design before March 1988 when Mr. d'Haene claims that he invented the Flanders Brilliant Cut, and more than a year before March 1990 when Mr. d'Haene filed his own patent application.

Moreover, the evidence at trial showed that the Petar Cut design disclosed every element of the Flanders Brilliant Cut design, such that a person with ordinary skill in the art of gemstone design could have produced it. This Court construed the '851 patent to cover:

> [A] gemstone with an octagonal girdle. Viewed from above, the gemstone is a square with the corners cut off, rather than a rectangle with the corners cut off. The gemstone incorporates 61 total facets as shown, including 33 facets on the crown and 28 facets on the pavilion. The facet edges are straight and not visibly curved or flared.

*Nat'l Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc.*, --- F.Supp.2d ---, No. 00 C 6402, 2003 WL 1733276, at *7 (N.D. Ill., Mar. 31, 2003). Mr. Tankosic's Petar Cut design is very similar -- a gemstone with an octagonal girdle, brilliant cut-style faceting on the crown and pavilion, and, viewed from above, a rectangular shape with the corners cut off.

Defendants emphasize that the Petar Cut differs from the Flanders Brilliant Cut because the latter's facet lines are straight and not visibly flared and because the latter is a square with the corners cut off, rather than a rectangle with the corners cut off. These differences, however, are very minor. The bowing or flaring illustrated in the drawings for Canadian patent no. 1,211,293 ("the '293 patent"), which embodies the Petar Cut design, is slight.[3] Further, although the '293 patent includes drawings that depict only a rectangular, cut-cornered gemstone, the written

---

[3] The testimony at trial established that such bowing or flaring is inevitable and that it is impossible to cut a gemstone with perfectly straight facet lines.

specifications and claims of the '293 patent refer to both rectangular and square versions of the Petar Cut design.

Defendants also contend that the Petar Cut design is not material because it is cumulative of other information considered by the patent examiner. They note that Mr. d'Haene filed another patent application for a rectangular version of the Flanders Brilliant Cut, which became U.S. design patent no. 337, 742 ("the '742 patent"), at roughly the same time he filed the '851 patent application. Defendants suggest that because the same patent examiner considered and granted both patent applications, the examiner must have known of the rectangular version of the Flanders Brilliant Cut design when he considered the application for the square version. Defendants argue that the Petar Cut design is, like the '742 patent, another rectangular, brilliant cut stone, and it is, therefore, cumulative of the '742 patent. Contrary to Defendants' suggestion, however, the Petar Cut design does not disclose just a rectangular, brilliant cut gemstone. Indeed, the written specifications and claims of the '293 patent refer to both rectangular and square versions of the Petar Cut design. Thus, the Petar Cut design is not cumulative of the '742 patent.

*Second*, Plaintiffs have produced evidence that Mr. d'Haene intended to deceive the PTO when he failed to disclose Mr. Tankosic's Petar Cut design. The courts must balance materiality and intent when weighing a claim of inequitable conduct, and thus, a lesser showing of intent is sufficient when, as in this case, the omission is highly material. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001). At the same time, however, there must be *some* threshold showing of intent for the courts to balance. There is no presumption of intent to deceive that arises merely from the materiality of an undisclosed prior art reference. *See Amgen Inc. v.*

6

*Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, (Fed. Cir. 2003) ("[W]e will not find inequitable conduct on an evidentiary record that is completely devoid of evidence of the patentee's intent to deceive the PTO."); *Allen Eng. Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("Materiality does not presume intent, which is a separate and essential component of inequitable conduct.").

Direct evidence of intent to deceive or proof of deliberate scheming is rarely available in instances of inequitable conduct, but the Court may infer intent from the surrounding circumstances. *See Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 32 (Fed. Cir. 1999) ("[I]ntent need not, and rarely can, be proven by direct evidence."); *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) (intent may be established by "'a showing of acts the natural consequences of which are presumably intended by the actor.'") (citation omitted); *Burlington Industries v. Dayco Corp.*, 849 F.2d 1418, 1421 (Fed. Cir. 1988) ("[T]he nondisclosure of facts of which the applicant should have known the materiality may justify an inference of intent to mislead in appropriate cases.").

Here, the testimony and other evidence introduced at trial confirm that Mr. d'Haene chose not to disclose the Petar Cut despite the fact that he was well aware both of the design itself and Mr. Tankosic's claims that the Flanders Brilliant Cut was an unauthorized copy. Moreover, the evidence at trial established that Mr. d'Haene knew that there were square versions of the Petar Cut, that the design was very similar to his own Flanders Brilliant Cut design, and that Mr. Tankosic had obtained some form of intellectual property protection for the Petar Cut design.

For example, it is clear that Mr. d'Haene saw square versions of Petar Cut diamonds in the Spring of 1988. Johannes Geerts, a diamond cutter with Diamant Obbers G. & ZN

("Diamant Obbers"), testified that he showed Mr. d'Haene square versions when Mr. d'Haene visited the Diamant Obbers factory. Mr. d'Haene admits that he saw Petar Cut stones sometime during this time period but claims that he saw only unfinished, oval-shaped Petar Cut stones. This Court, however, finds that Mr. Geerts' testimony significantly more credible than that of Mr. d'Haene, especially in light of the fact that Mr. Geerts saved the Petar Cut design drawings which show both square and rectangular versions of the design.

Further, Mr. d'Haene knew of Mr. Tankosic's claims that the Flanders Brilliant Cut was a knock-off of the Petar Cut design. In late-1988 or early-1989, Mr. Tankosic wrote a letter to *Europa Star Diamond Intelligence Briefs* ("*Europa Star*"), a diamond industry publication, complaining that the Flanders Brilliant Cut was an unauthorized copy of his own design. *Europa Star* published the letter in its October 27, 1989 issue and, significantly, reported Mr. Tankosic's claim that he had patented the Petar Cut design. On November 22, 1989, Mr. d'Haene sent a letter to the editor of the *Europa Star*, acknowledging that he was aware of the Petar Cut but denying that he copied the design.

Mr. d'Haene also testified that he was aware of another letter from Mr. Tankosic dated January 2, 1990, in which Mr. Tankosic explained that he had obtained a Canadian patent for his Petar Cut design. Mr. d'Haene asked an attorney for his company, Nippon Marketing Partners ("NMP"), to respond to this letter, and Mr. d'Haene asked Dirk Obbers (of Diamant Obbers) for any materials he had concerning Mr. Tankosic and the Petar Cut design. Mr. Obbers provided design drawings for the Petar Cut, a copyright registration filed by Mr. Tankosic for the Petar Cut design, and the original claims from the '293 patent application. At trial, Mr. d'Haene denied

8

knowledge of any intellectual property protection over the Petar Cut, but his testimony was simply not credible.

Later that year, Backes and Strauss, one of NMP's Canadian customers, asked that the company take back its Flanders Brilliant Cut diamonds after it was told that the diamonds were an unauthorized copy of Mr. Tankosic's Petar Cut design. Mr. d'Haene directed another attorney to respond to the request from Backes and Strauss. This letter acknowledged the existence, and Mr. d'Haene's awareness, of the square version of the Petar Cut design and expressly referred to the fact that Mr. Tankosic had obtained copyright protection over the design.

In this case, direct evidence of intent to deceive the PTO is limited. There is no 'smoking gun' in the form of a memo or other document, and Mr. d'Haene testified at trial that he did not intend to deceive the PTO. Mr. d'Haene's testimony was thoroughly impeached on a variety of issues throughout the trial, however, and the Court concludes that his denial of any intent to deceive also lacks credibility, which is a form of direct evidence of intent.

Regardless, there is ample circumstantial evidence that Mr. d'Haene intended to deceive the PTO. Mr. d'Haene failed to disclose these prior art references despite his familiarity with both square and elongated versions of the Petar Cut design (the former being highly similar to the Flanders Brilliant Cut), his awareness that Mr. Tankosic had obtained some form of intellectual property protection over the Petar Cut design, and the fact at least one of NMP's customers was concerned by the similarities between the two designs and the copying accusations.

Defendants complain that, at most, the evidence of Mr. d'Haene's intent amounts to gross negligence. Ordinarily, gross negligence does not of itself justify an inference of intent to deceive. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir.

9

1988) ("[A] finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive"). Such conduct, however, can support an inference of intent "when, 'viewed in light of all the evidence, including evidence indicative of good faith,' the conduct is culpable enough 'to require a finding of intent to deceive.'" *Halliburton*, 925 F.2d 1435, 1442 (citation omitted). A patentee facing a "high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1257 (Fed. Cir. 1997). In such circumstances, a "mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice." *Id.*

In this case, Defendants have not pointed to any compelling evidence of Mr. d'Haene's supposed good faith, and thus, even if his conduct is deemed gross negligence, the evidence is sufficient to surmount the intent threshold in the inequitable conduct analysis. For the reasons discussed above, however, this Court concludes that the evidence introduced at trial establishes that Mr. d'Haene's conduct goes beyond gross negligence and reflects an affirmative intent to deceive the PTO.

Weighing the evidence of materiality and intent, the Court concludes that Plaintiffs have demonstrated by clear and convincing evidence that Mr. d'Haene's failure to disclose the prior art references concerning the Petar Cut design constitutes inequitable conduct.

## II.    Plaintiffs Have Not Established That This Is an Exceptional Case That Would Justify an Award of Attorneys' Fees.

Under 35 U.S.C. § 285, courts may award reasonable attorneys' fees to the prevailing

party in patent litigation in "exceptional cases." The statute is designed to deter "clearly

unwarranted suits on obviously invalid or unenforceable patents." *Mathis v. Spears*, 857 F.2d

749, 754 (Fed. Cir. 1988). The exceptional circumstances requirement strikes "a balance

between the interest of the patentee in protecting his statutory rights and the interest of the public

in confining such rights to their legal limits." *Machinery Corp. of America v. Gullfiber AB*, 774

F.2d 467, 471 (Fed. Cir.1985).

The prevailing party bears the initial burden of establishing the exceptional character of

the case by clear and convincing evidence. *See Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529,

1538, 222 USPQ 553, 560 (Fed. Cir. 1984). A finding of exceptional circumstances, however,

does not mandate the award of attorney's fees. *See Consolidated Aluminum Corp. v. Foseco*

*International Ltd.*, 910 F.2d 804, 815 (Fed. Cir. 1990); *Reactive Metals Alloys Corp v. ESM, Inc.*,

769 F.2d 1578, 1582 (Fed. Cir. 1985). The Court must also assess whether in its discretion it

feels that a fee award is appropriate.

Although a finding of inequitable conduct may justify an award of attorney's fees, not

every case of inequitable conduct is an exceptional case within the meaning of Section 285. *See*

*Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("[I]t

has not been held that every case of proven inequitable conduct must result in an automatic

attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the

case as 'exceptional.'"). "To prove a case exceptional imposes more stringent requirements than

11

proof of inequitable conduct." *Halliburton Co. v. Schlumberger Tech. Corp.*, 722 F.Supp. 1433, 1434 (S.D. Tex. 1989) (citing *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1387 (Fed. Cir. 1987) (Nies, J., concurring)).

No specific test exists determine whether a case involves exceptional circumstances justifying an award of attorney's fees under Section 285. The Court may consider the conduct of the patentee before the PTO and during subsequent litigation and "any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). *See also Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984) (an award of attorney's fees under Section 285 "should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other inequitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear."); *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 708 F.2d 1554, 1560 (10th Cir. 1983) ("[A] case is exceptional if there arises 'such misconduct on the part of the losing party as to constitute fraud on the patent office or [conduct] so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel.'") (citation omitted).

After thorough consideration of the evidence in this case, including an evaluation of the credibility of the witnesses who testified at trial, this Court concludes that the Defendants' conduct, although it satisfies the standard for inequitable conduct, falls short of the level of culpability necessary for a finding of exceptional circumstances which would support an award of attorney's fees.

## CONCLUSION

This Court concludes that Mr. d'Haene's failure to disclose the prior art references concerning the Petar Cut design constitutes inequitable conduct, but that this is not an exceptional case that would justify an award of attorneys' fees.

Dated: July 14, 2003

AMY J. ST. EVE
U.S. District Court Judge